UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/14/17
```

-------------------------------------------------------------- X

DAVID WEISS,

                              Plaintiff,

    -against-

MACY'S RETAIL HOLDINGS INC., a/k/a
MACY'S INC.,

                              Defendant.

-------------------------------------------------------------- X

**OPINION AND ORDER
DENYING DEFENDANT'S
MOTION TO COMPEL
ARBITRATION**

16 Civ. 7660 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff David Weiss ("Weiss") brought this action under the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12191, *et seq*, against his employer, defendant Macy's

Retail Holdings Inc. ("Macy's"). Weiss alleges that his employer harassed him because of his

learning disability, failed to accommodate him, and terminated his employment because of his

disability. Macy's has moved to stay this action and compel arbitration of Weiss' claims.

Macy's contends that Weiss agreed to resolve all employment-related legal disputes with Macy's

through binding arbitration because Weiss did not affirmatively agree to "decline the benefits of

arbitration" in a form that Macy's mailed to him. I hold that Weiss did not enter into an

agreement with Macy's to arbitrate employment-related legal disputes because the essential

elements of contract formation have not been met. The form that Macy's sent to Weiss did not

constitute an offer, and Weiss's silence upon receipt of that form did not constitute acceptance.

Macy's motion is denied.

## STATEMENT OF FACTS

        From 1997 to 2015, Weiss was an employee at a Macy's store located in Yonkers,

New York. In 2003, Macy's instituted a company-wide employee dispute resolution program

called "Solutions InSTORE." The first three steps of the InSTORE program were internal to
Macy's. The fourth step of the program, however, consisted of binding arbitration. Declaration
of Matthew Melody, ¶¶ 11-14. Weiss categorically denies ever receiving any information about
the arbitration component of Macy's dispute resolution program. Weiss states: "I worked at
Macy's for approximately 18 years and I was never advised either in writing or in-store training
or meetings that Macy's was offering me the right to enter an agreement to arbitrate. That never
happened." Declaration of David Weiss, ¶ 20.

              In connection with the rollout of the InSTORE program, Macy's held
informational meetings for its employees at each of its stores. At the meetings, Macy's showed
employees an informational video, and distributed a letter from Macy's CEO and a brochure
containing information about the InSTORE program, including the arbitration component.
Melody Decl. ¶¶ 20-23; Exs. B, C and D. The brochure, in a section entitled "The Decision is
Yours," stated that if "you decide you would like to be excluded from participating in and
receiving the benefits of Step 4 [arbitration], we will ask you to tell us in writing by completing a
form that will be mailed to all employees' homes this Fall." Melody Decl. Ex. B at 10. Nothing
in the brochure stated or otherwise implied that agreeing to arbitrate employment-related
disputes was mandatory or a condition of continued employment.

              Rose Ashmore, the director of Macy's Associate and Labor Relations department,
has submitted a declaration stating that she was directly responsible for the rollout and
implementation of the InSTORES program in 2003 and 2004, and that her office, "in conjunction
with other management representatives, conducted information sessions with employees at the
Cross Country Shopping Center Macy's store," the location where Weiss worked. Declaration
of Rose Ashmore, ¶ 7. During those information sessions, Ashmore's office "addressed the
benefits of arbitration," and "expressly conveyed" that if employees did not want to arbitrate
disputes, they would need to complete and return a form that would be sent to each employee's

home address. *Id.* Weiss, however, states that he was never shown an informational video and did not receive any materials regarding arbitration at an employee meeting at the Yonkers store. Weiss Decl. ¶¶ 10-13.

In September 2003, Macy's mailed a packet to each employee's home address, including Weiss. Melody Decl. ¶¶ 34-37. The September 2003 packet included the "Solutions InSTORE Program Plan Document," as well as an "Election Form." Melody Decl. Exs. A and F. The Plan Document stated that the following category of employees would be "covered" by binding arbitration: "All newly hired Associates and existing Associates ... who have voluntarily elected the benefits of arbitration by not returning an 'Arbitration Election Form' within the prescribed time limits, removing them from coverage." Melody Decl. Ex. A at 5. Nothing in the Plan Document stated or otherwise implied that agreeing to arbitrate employment-related disputes was mandatory or a condition of continued employment.

The Election Form included in the September 2003 packet was the mechanism by which Macy's employees could decline to arbitrate employment-related claims, thus maintaining their access to public courts and the status quo. The Election Form states that "this form serves as an election form only if you choose **not to be covered** by the benefits of Arbitration," and instructs the recipient to "complete and return this form ONLY IF YOU DO NOT WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION during your career with the company." Below that, the recipient is given the option of checking a box next to the following sentence: "**I Decline the Benefits of Arbitration**. I have read all the information about Solutions InSTORE and I elect NOT to be covered by the benefits of Arbitration." A signature line appears next, accompanied by the following sentence: "**AUTHORIZATION.** *I have received, read, and understand the Plan Document, and voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE program.*" Finally, the very

3

bottom of the form states: "RETURN THIS FORM ONLY IF DECLINING THE BENEFITS OF ARBITRATION." Melody Decl. Ex. F.

Because Macy's never received an Election Form from Weiss, it never sent Weiss a letter confirming that he had opted out of arbitration. Melody Decl. ¶¶ 47-49; Ex. J. Instead, Macy's sent Weiss a brochure entitled "You're in Good Company," which confirmed that he had declined Macy's offer to arbitrate future disputes. Melody Decl. ¶¶ 50-52; Exs. K and L. In the fall of 2004, Macy's sent each employee a second packet containing another brochure, letter, and the same Election Form. Melody Decl. ¶¶ 53-59; Exs. M, N and O. Macy's never received an Election Form from Weiss following the 2004 mailing. Melody Decl. ¶ 62.

Macy's states that it mailed both the 2003 and 2004 packets to Weiss' home address. Weiss' name and address appear on the list of recipients maintained by Macy's for both mailings. Melody Decl. ¶ 35-36; Exs. H and P. Both mailings were sent to the same address that Macy's used to send Weiss other documents, such as benefits information and tax documents. Declaration of Tracy Deel, ¶ 4; Declaration of Alex Bleckert, ¶ 17. No document sent to Weiss' address was ever returned as undeliverable. Melody Decl. ¶ 40; Deel Decl. ¶ 6; Bleckert Decl. ¶ 16. In support of these facts, Macy's has submitted several declarations from the individuals who were personally responsible for executing these mailings. *See generally*, Declaration of Tracy Deel, Declaration of Rose Ashmore, Declaration of Owen Lewis, and Declaration of Alex Bleckert. These declarations demonstrate that Macy's sent both the 2003 and 2004 packets to Weiss in accordance with Macy's standard mailing procedures.

Weiss, however, states that he never received the 2003 or 2004 packets, and that if he had received them, he would have opted out of arbitration. Weiss Decl. ¶¶ 10, 14-15. Weiss' brother, who lives with Weiss, also submitted a declaration stating that Weiss never received the documents. Declaration of Joseph Weiss, ¶¶ 12-15.

4

## DISCUSSION

### I.     Macy's is Entitled to a Rebuttable Presumption that Weiss Received the Mailings Containing the Arbitration Election Form

In support of its motion, Macy's has submitted declarations from the Macy's employees that were directly responsible for the rollout of the InSTORES program, including the 2003 and 2004 mailings that Weiss contends he never received. *See generally*, Declaration of Rose Ashmore, Declaration of Owen Lewis, Declaration of Tracy Deel, and Declaration of Alex Bleckert. This evidence amply demonstrates that Macy's sent Weiss the 2003 and 2004 packets containing the Election Form in accordance with Macy's standard mailing procedures, which gives rise to a rebuttable presumption that Weiss received the mailings. *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (noting that "New York law has established a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures" and holding that "the affidavits of Macy's personnel created a rebuttable presumption that [plaintiff] received the program information."). I need not resolve whether Weiss has rebutted this presumption because, as discussed below, I hold as a matter of law that even if Weiss was on notice of the arbitration program and received the Election Form, Macy's and Weiss did not enter into an agreement to arbitrate.

### II.     The Parties Did Not Enter Into an Agreement to Arbitrate

"It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to submit to arbitration any matter that party has not agreed to arbitrate." *Software for Moving, Inc. v. La Rosa Del Monte Exp., Inc.*, 2009 WL 1788054, at *7 (S.D.N.Y. June 23, 2009). The "FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The question of whether two parties have agreed to arbitrate is resolved by applying "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties agree that New York law

5

applies. Dkt. No. 16 at 8. "To form a valid contract under New York law, there must be an

offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v.*

*Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted). Additionally, "it is well settled

that [a] party to an agreement may not be compelled to arbitrate its dispute with another unless

the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate."

*Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (N.Y. 2008) (internal quotation marks and citations

omitted). An arbitration agreement "must not depend upon implication or subtlety." *Waldron v.*

*Goddess*, 61 N.Y.2d 181, 184 (N.Y. 1984). However, to avoid treating arbitration agreements

differently than other types of contracts, a party seeking to enforce an arbitration agreement must

prove its existence by a preponderance of the evidence only, the standard that applies for

nonarbitration agreements. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De*

*Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).

        In this case, no contract was formed because there was neither an offer nor an

acceptance. As a result, there was no agreement to arbitrate.

### a. There Was No Offer

        The Election Form is a remarkably counterintuitive, ambiguous, and misleading

document. Nothing in the document makes clear that it is a contract. Rather, the Election Form

asks the recipient to "agree that I am waiving the ability to participate in Step 4" of the

InSTORES program, which Macy's benignly describes throughout the document as the "benefits

of arbitration." Generally speaking, one does not typically seek to waive a benefit, and the

concept of waiving a benefit is certainly not synonymous with the concept of declining an offer

to enter into a contract in order to maintain the status quo. In this sense, the Election Form

creates the false impression that by signing the document, the recipient employee would be

giving up a pre-existing right to be "covered by the benefits of arbitration." In reality, however,

6

by *not* signing the form, the employee gives up his or her pre-existing right to litigate in public court. The Election Form thus obfuscates the fact that by doing nothing, the employee is giving up that right. A document this ambiguous and misleading cannot constitute an offer to enter into a binding arbitration agreement. *See Hirsch v. Citibank, N.A.*, 2014 WL 2745187, at *16 (S.D.N.Y. June 10, 2014), *aff'd*, 603 F. App'x 59 (2d Cir. 2015) (finding arbitration agreement unenforceable in part because defendant bank failed to make clear to its clients that a Client Manual containing an arbitration clause was in fact a contract); *Dynamic Int'l Airways, LLC. v. Air India Ltd.*, 2016 WL 3748477, at *8 (S.D.N.Y. July 8, 2016) ("The Second Circuit has identified certain principles of New York contract law relevant to construing arbitration agreements" including that "ambiguous language should be construed against the interest of the drafting party.").

### b. There Was No Acceptance

Macy's contends that Weiss' failure to return the Election Form and affirmatively decline arbitration resulted in a binding agreement between Weiss and Macy's to arbitrate all employment-related disputes. However, "an offeror has no power to transform an offeree's silence into acceptance when the offeree does not intend to accept the offer[.]" *Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir. 1972); *see also Bronner v. Park Place Entm't Corp.*, 137 F. Supp. 2d 306, 312 (S.D.N.Y. 2001) ("[A]bsent a duty to speak, a party's silence cannot be translated into an acceptance of an offer to contract."); *Wilhelmshaven Acquisition Corp. v. Asher*, 1992 WL 170671, at *3 (S.D.N.Y. July 2, 1992) ("Under New York law, silence generally does not constitute acceptance of an offer unless the effect of the silence is to mislead the other party."). There are exceptions to this rule, which are in essence forms of estoppel, but none of them apply here.

7

First, silence may operate as acceptance if supported by the parties' "course of conduct." *Russell v. Raynes Assocs. Ltd. P'ship*, 569 N.Y.S.2d 409, 414 (1st Dep't 1991). However, this exception generally applies only where there is an *ongoing* course of conduct. *See* Restatement (Second) of Contracts § 69 (1981) (silence may operate as acceptance "where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept."); *Albrecht Chem. Co. v. Anderson Trading Corp.*, 298 N.Y. 437, 440–41 (N.Y. 1949) (recognizing that silence can operate as acceptance where "the parties may have been advised and warned by a previous course of dealings that inaction would be taken as assent."). This exception does not apply here because the parties have not had any previous dealings in which Weiss tacitly and repeatedly accepted Macy's offer to arbitrate.

Second, silence may operate as acceptance "where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation." Restatement (Second) of Contracts § 69 (1981). This exception clearly does not apply to the facts presented in this case.

Third, silence may operate as acceptance where "the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer." Restatement (Second) of Contracts § 69 (1981). Under this exception, silence may constitute acceptance following "an explicit statement by the offeree which gives the offeror reason to understand that silence will constitute acceptance." *Russell*, 166 A.D.2d at 15. The logic underpinning this exception is that an offeree's "silence will be deemed an acquiescence where he or she is under such duty to speak that his or her 'conduct, accompanied by silence, would be deceptive and beguiling[.]'" *Id.* (quoting *Brennan v. Nat'l Equitable Inv. Co.*, 160 N.E. 924, 925 (N.Y. 1928)). Thus, "silence operates as an assent and creates an estoppel *only when it has the effect to mislead.*" *Tanenbaum Textile Co. v. Schlanger*, 287 N.Y. 400, 404 (N.Y. 1942) (emphasis added); *see also Friedman v.*

8

*Schwartz*, 2011 WL 6329853, at \*5 (E.D.N.Y. Dec. 16, 2011) ("New York recognizes that '[w]hen a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence.'") (quoting *Tanenbaum Textile,* 287 N.Y. at 404).

This exception does not apply, for absent some element of deception or dishonesty on the part of Weiss, the "mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." Restatement (Second) of Contracts § 69, cmt. c (1981). Here, there is nothing to suggest that Weiss intended, through his silence, to give Macy's the false impression that he had accepted Macy's offer to arbitrate. *Albrecht Chem. Co. v. Anderson Trading Corp.*, 298 N.Y. 437 (N.Y. 1949) is instructive. In *Anderson Trading*, a buyer of goods submitted a purchase order containing several terms, including a provision that any dispute between the parties would be resolved through arbitration. At the bottom, the buyer's form stated that "the terms and conditions thereof shall be deemed accepted by the seller if he should fail to advise the buyer to the contrary within ten days." *Id.* at 439. The New York Court of Appeals refused to enforce the arbitration provision, reasoning that it was a "settled rule that, where the recipient of an offer is under no duty to speak, silence, when not misleading, may not be translated into acceptance *merely because the offer purports to attach that effect to it.*" *Id.* at 440 (emphasis added). This "settled rule" applies here. Because Weiss' silence and inaction upon receipt of the Election Form did not operate as acceptance, no contract was formed and there is no agreement between Macy's and Weiss to arbitrate employment-related disputes.

Macy's primarily relies on *Manigault v. Macy's E., LLC*, 318 F. App'x 6 (2d Cir. 2009), which involved the same Election Form at issue in this case. In *Manigault*, the Second Circuit held that because a Macy's employee failed to return the Election Form, that employee agreed to arbitrate all future employment-related disputes.

9

*Manigault* is an unpublished summary order and therefore has no precedential effect. *See* Cir. Local R. 32.1.1 ("Rulings by summary order do not have precedential effect."); *Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256, 257 (E.D.N.Y. 2012) ("Because *Manigault* is an unpublished summary order, it is not binding on this Court."). A summary order may provide "some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion," *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010), but a district court has no obligation to follow a summary order where the reasoning was cursory or unsound. *See, e.g.*, *Alvarez*, 914 F. Supp. 2d at 257 (The *Manigault* Court's analysis is unsound. This Court therefore declines to apply *Manigault* 's holding to the instant case.").

I decline to follow *Manigault* because its holding rests on an irrelevant proposition of law: where an employer presents an arbitration agreement as a condition of employment, an employee's continued employment may constitute acceptance of the agreement to arbitrate. The sole legal basis for the Second Circuit's conclusion that Manigault's silence operated as acceptance was that an "employee may consent to a modification to the *terms* of employment by continuing to work after receiving notice of the modification." *Manigault*, 318 F. App'x at 8 (emphasis added). Because "Manigault continued to work after receiving notice of the [InSTORE] program," she "therefore agreed to arbitration by continuing with her employment." *Id.* In support of this conclusion, the Second Circuit cited to *Bottini v. Lewis & Judge Co.*, 621 N.Y.S.2d 753 (3d Dep't 1995), in which the New York Appellate Division reasoned that the "defendant was free to modify the terms of plaintiff's employment, subject only to plaintiff's right to leave his employment if he found the new terms unacceptable. Having remained in defendant's employment, however, plaintiff is deemed to have assented to the modification and, in effect, commenced employment under a new contract." 621 N.Y.S.2d at 754.

10

Cases such as *Bottini* are irrelevant to the instant motion because Macy's never presented Step 4 of the InSTORE program – binding arbitration – as a term or condition of continued employment. Quite the opposite, the brochure that Macy's gave to Weiss states that "the decision is yours," Melody Decl. Ex. B at 10, and nothing in the Election Form or any other document suggests that Weiss' employment would be jeopardized if he refused to agree to arbitrate. Macy's now argues that "by accepting or continuing employment with Macy's, all employees agree to arbitration under the Solutions InSTORE Program, unless said employee opts out of the program." But nothing in any of the documents that Macy's gave or sent to its employees states that an employee's continuation of employment with Macy's constitutes acceptance of the agreement to arbitrate.

This case is therefore distinguishable from other cases in which an employer issues a new employee handbook or set of employee guidelines, and the employee consents to the terms contained therein by continuing his employment. In *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390 (S.D.N.Y. 2013), for example, the employer had notified employees that "by choosing to continue to work for the Company after July 1, 2009, you are agreeing to be covered by [the arbitration program] after July 1, 2009." The court reasoned that "under these circumstances, Dixon's continued employment beyond July 1, 2009 constituted acceptance of the binding arbitration agreement contained in the 2009 Manual." 947 F. Supp. 2d at 400; *see also Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 500 n.2 (S.D.N.Y. 2013) (enforcing arbitration agreement where employer handbook "expressly subjected and conditioned her employment on final and binding arbitration of employment-related disputes.").

Here, by contrast, Macy's gave its employees full control over whether they wanted to agree to arbitrate employment-related disputes. Macy's then attempted to convert the silence and inaction of its employees into acceptance of its offer to arbitrate by purporting to

11

attach that effect to their silence. New York contract law does not permit this. *See Anderson Trading*, 298 N.Y. at 440.

## CONCLUSION

For the reasons stated herein, defendant's motion is denied. The Clerk shall terminate the motion (Dkt. No. 13). The parties shall appear for a status conference on July 28, 2017 at 10:00 a.m., and shall present the Court with a proposed case management plan.

SO ORDERED.

Dated:      July 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

12